**FILED**

**MARCH 7, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

**08 C 1387**

| | |
|---|---|
| RICHARD GARZA, Individually, on Behalf of All Others Similarly Situated, and Derivatively on Behalf of Nominal Defendant NAVISTAR INTERNATIONAL CORPORATION,<br><br>        Plaintiff,<br><br>        v.<br><br>Y. MARC BELTON, EUGENIO CLARIOND, JOHN D. CORRENTI, ABBIE J. GRIFFIN, MICHAEL N. HAMMES, JAMES H. KEYES, ROBERT C. LANNERT, SOUTHWOOD J. MORCOTT, DANIEL C. USTIAN, and MARK T. SCHWETSCHENAU,<br><br>        Defendants,<br><br>        and<br><br>NAVISTAR INTERNATIONAL CORPORATION,<br><br>        Nominal Defendant. | **JUDGE GOTTSCHALL**<br>**MAGISTRATE JUDGE BROWN**<br><br>CIVIL ACTION NO. _____<br><br><br>VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT<br><br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by the undersigned attorneys, submits this Verified Class Action and Derivative Complaint (the "Complaint") against the defendants named herein.

**NATURE OF THE ACTION**

1.      Plaintiff brings this action individually, on behalf of a class of shareholders (the "Class," as defined herein) of Navistar International Corporation ("Navistar" or the "Company"), and derivatively for the benefit of Navistar against the members of Navistar's Board of Directors (the "Board') and certain of its current and former executive officers seeking to remedy

defendants' breaches of fiduciary duties and other violations of law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.  This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

3.      Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

4.      Plaintiff Richard Garza ("Plaintiff") is a shareholder of nominal defendant Navistar, was a shareholder of Navistar at the time of the wrongdoing alleged herein, and has been a shareholder of Navistar continuously since that time.  Plaintiff is a citizen of the State of Iowa.

5.      Nominal defendant Navistar is a Delaware corporation with its principal executive offices located at 4201 Winfield Road, P.O. Box 1488, Warrenville, Illinois 60555.  According to its public filings, Navistar is a holding company that operates through its principal operating subsidiaries, International Truck and Engine Corporation and Navistar Financial Corporation.

6.      Defendant Y. Marc Belton ("Belton") has served as a member of the Board since 1999.  Belton also served as a member of the Audit Committee of the Board (the "Audit

Committee") from 2002 until 2005.  Belton is a citizen of the State of Minnesota.

7.      Defendant Eugenio Clariond ("Clariond") has served as a member of the Board since 2002.  Clariond has also served as a member of the Audit Committee since 2005, and currently serves as a member of the Compensation Committee of the Board (the "Compensation Committee").  Clariond is a citizen of Mexico.

8.      Defendant John D. Correnti ("Correnti") has served as a member of the Board since 1994.  Correnti also served as a member of the Audit Committee from 2002 to 2005, and currently serves as a member of the Compensation Committee.  Correnti is a citizen of the State of Arkansas.

9.      Defendant Abbie J. Griffin ("Griffin") has served as a member of the Board since 1998.  Griffin has also served as a member of the Audit Committee since 2002.  Griffin is a citizen of the State of Utah.

10.     Defendant Michael N. Hammes ("Hammes") has served as a member of the Board since 1996.  Hammes currently serves as a member of the Compensation Committee.  On February 25, 2008, the Company announced that Hammes had been appointed lead director of the Board.  Hammes is a citizen of the State of California.

11.     Defendant James H. Keyes ("Keyes") has served as a member of the Board since 2002.  Keyes has also served as a member of the Audit Committee since 2002, and currently serves as a member of the Compensation Committee.  Keyes is a citizen of the State of South Carolina.

12.     Defendant Robert C. Lannert ("Lannert") formerly served, at relevant times, as the Company's Vice Chairman and Chief Financial Officer ("CFO"), and as a member of the Board.  Lannert is a citizen of the State of Illinois.

13.    Defendant Southwood J. Morcott ("Morcott") has served as a member of the Board since 2000. Morcott currently serves as a member of the Compensation Committee. Morcott is a citizen of the State of Florida.

14.    Mark T. Schwetschenau ("Schwetschenau") formerly served, at relevant times, as the Company's Senior Vice President and Controller. Schwetschenau is a citizen of the State of Illinois.

15.    Defendant Daniel C. Ustian ("Ustian") has served as the Company's Chairman of the Board ("Chairman"), of since February 17, 2004, as the Company's Chief Executive Officer ("CEO") since February 19, 2003, and as the Company's President and a director since April 16, 2002. Ustian also formerly served as the Company's Chief Operating Officer. Ustian is a citizen of the State of Illinois.

16.    Collectively, the defendants listed in paragraphs 6 through 15 are referred to herein as the "Individual Defendants."

17.    Collectively, defendants Belton, Clariond, Correnti, Griffin, and Keyes are referred to herein as the "Audit Committee Defendants."

18.    Collectively, defendants Belton, Clariond, Correnti, Griffin, Hammes, Keyes, Lannert, Morcott, and Ustian are referred to herein as the "Director Defendants."

### DUTIES OF THE INDIVIDUAL DEFENDANTS

19.    By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual

Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

20.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

a.    exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

b.    exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with the Company's by-laws and all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

c.    exercise good faith to ensure that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP");

d.    exercise good faith in supervising the preparation and filing of all financial statements and other financial information required by law, including periodic financial statements and reports filed with the Securities and Exchange Commission ("SEC"), and in examining and evaluating the financial statements and other information concerning the financial affairs of the Company; and

e.    when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence.

21.    The Individual Defendants, particularly the Audit Committee Defendants, were responsible for maintaining and establishing adequate internal accounting controls for the Company and ensuring that the Company's financial statements were based on accurate financial information.  According to GAAP and SEC rules, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure.  Among other things, the Individual Defendants were required to:

    a.    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

    b.    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

        i.    transactions are executed in accordance with management's general or specific authorization;

        ii.    transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

22.    According to the Audit Committee's Charter, the Audit Committee is appointed by the Board to assist the Board in fulfilling its responsibility for oversight of (i) the integrity of the financial statements of the Company, (ii) the Company's compliance with legal and regulatory requirements, (iii) the independence and qualifications of the Company's public accountant, (iv) the performance of the Company's internal audit function and independent public accountant, and (v) the assessment of business risk management, and for other such duties as directed by the Board.

23.    In fulfillment of these obligations, the Audit Committee Charter provides that the Audit Committee shall, among other things:

    a.    Review and discuss with management and the independent auditor, the Corporation's annual audited financial statements, quarterly

financial statements, and all internal control reports (or summaries thereof) and recommend to the Board the inclusion of the Corporation's audited financial statements in the Corporation's annual report on Form 10-K. The review shall include consideration of the application of the Corporation's accounting principles and their impact on the quality of its financial reporting;

b.      Review and discuss with management and the independent auditor the Corporation's Form 10-Qs prior to filing the reports with the SEC.

c.      Discuss with management and the independent auditor, as appropriate, corporate policies with respect to earnings press releases, as well as financial information and earnings guidance provided to analysts and to rating agencies. This discussion would include the type of information to be disclosed and type of presentation to be made.

d.      In connection with each periodic report of the Corporation, review management's disclosure to the Committee required under §302 of the Sarbanes-Oxley Act with respect to the Corporation's disclosure and internal controls, and the content of the CEO and CFO certifications required by §302 and §906 of the Act and of management's annual report on internal controls required by Section 404 of the Act.

e.      Select the independent public accountant to be retained to audit the financial statements of the Corporation. In so doing, the Audit Committee will request from the public accountant at least annually a written affirmation that the public accountant is in fact independent, and discuss with the public accountant any relationships that may impact the auditor's independence. The Committee shall be directly responsible for the appointment, compensation and oversight of the work of the independent auditor. The Committee shall have the sole authority to approve all audit engagement fees and terms, and the Committee, or the Chairperson, shall pre-approve any permitted non-audit service provided to the Corporation by the independent auditor in accordance with Section 10A(i) of the Securities Exchange Act of 1934. In carrying out its duties under this paragraph, if the Committee approves an audit service within the scope of engagement of the independent auditor, such audit service shall be deemed to have been pre-approved for purposes of this paragraph.

f.      Review the auditing services with the independent auditor, including the plan, fees, scope and the results of their auditing engagements.

g.   Discuss with the independent auditor and management, as appropriate, any audit problems or difficulties encountered during the course of the audit, and management's response.

h.   Obtain and review at least annually a formal written report from the independent auditor delineating: the independent auditor's internal quality-control procedures; any material issues raised within the preceding five years by the independent auditor's internal quality-control reviews, by peer reviews of the firm, or by any governmental or other inquiry or investigation relating to any audit conducted by the firm. The Committee will also review steps taken by the independent auditor to address any findings in any of the foregoing reviews.

i.   Review with management, the chief internal audit executive and the independent auditor the Corporation's processes to maintain an adequate system of internal controls.

j.   Review with financial management, the chief internal audit executive and the independent auditor at least annually the Company's critical accounting polices along with any significant changes in GAAP and/or MAP standards.

k.   Provide guidance and oversight to the internal audit activities of the Corporation including (i) approve the charter of the internal audit function, (ii) approve the risk assessment, audit plan and budget of the internal audit function, (iii) approve the appointment, removal, evaluation, and compensation of the chief internal audit executive, (iv) receive communications directly from the chief internal audit executive on the results of internal audit activities or other matters that he or she determines necessary, including private meetings without management present, and (v) determine whether there are scope, budgetary or staffing limitations that impede the ability of the internal audit function to execute its responsibilities.

l.   Review the Board's and the Corporation's compliance with the Corporation's Policy on Ethical Business Conduct and review and approve any waiver of such policy for Directors and senior management of the Corporation.

### FACTUAL ALLEGATIONS

### The Individual Defendants' Breaches of Fiduciary Duties

24.   Since 2002, the Company, with the knowledge, approval, and/or acquiescence of the Individual Defendants, regularly and systematically violated GAAP by materially misstating

8

or overstating, among other things, the following:

    a.  Employee benefit arrangements;

    b.  Product warranties;

    c.  Leases;

    d.  Securitization of financial instruments;

    e.  Consolidation accounting;

    f.  Vendor rebates and tooling costs;

    g.  Liabilities related to contingencies;

    h.  Revenue recognition;

    i.  Derivative instruments;

    j.  Functional currency designation;

    k.  Property and equipment;

    l.  Inventories;

    m.  Unreconciled accounts and timing of income/expense recognition; and

    n.  Income tax.

25.    Since 2002 the Individual Defendants received numerous reports regarding problems with Navistar's accounting and financial reporting practices and internal controls. Through their receipt of weekly, monthly, and quarterly reports; attendance at Board and Audit Committee meetings; review of the Company's financial statements; and conversations with the Company's management, internal auditors, and external auditors, the Individual Defendants knew that Navistar's accounting and financial reporting practices were improper and its internal controls were materially deficient. In breach of both their fiduciary duty of good faith and, with respect to the Audit Committee Defendants, their responsibilities pursuant to the Audit

Committee Charter, the Individual Defendants willfully ignored the obvious and pervasive problems with Navistar's accounting and financial reporting practices and procedures, and internal controls, and failed to make a good faith effort to correct the problems or prevent their recurrence.

26.    From and including 2002 until 2005, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

    a.    Form 10-K for the fiscal year ended October 31, 2002, filed with the SEC on December 31, 2002 and signed by defendants Clariond, Correnti, Griffin, Hammes, Keyes, and Morcott;

    b.    Form 10-K for the fiscal year ended October 31, 2003, filed with the SEC on December 19, 2003 and signed by defendants Belton, Clariond, Correnti, Griffin, Hammes, Keyes, Lonnert, Morcott, Schwetschenau, and Ustian; and

    c.    Form 10-K for the fiscal year ended October 31, 2004, filed with the SEC on February 15, 2005 and signed by defendants Belton, Clariond, Correnti, Grifffin, Hammes, Keyes, Lannert, Morcott, Schwetschenau, and Ustian.

27.    Furthermore, in the first nine months of 2005, the Company, with the knowledge, approval, and participation of defendants Lannert, Schwetschenau, and Ustian, disseminated its false financial statements in, *inter alia*, the following Form 10-Q filings:

    a.    Form 10-Q for the fiscal quarter ended January 31, 2005, filed with the SEC on April 25, 2005 and signed and/or certified by defendants Lannert, Schwetschenau, and Ustian;

    b.    Form 10-Q for the fiscal quarter ended April 30, 2005, filed with the SEC on June 9, 2005 and signed and/or certified by defendants Lannert, Schwetschenau, and Ustian; and

    c.    Form 10-Q for the fiscal quarter ended July 31, 2005, filed with the SEC on September 9, 2005 and signed and/or certified by defendants Lannert, Schwetschenau, and Ustian.

28.    The statements made in the forgoing financial statements were false and misleading when made because the Individual Defendants knowingly failed to disclose that the Company's net income was materially overstated, or that the Company's net loss was materially understated, because the Company materially misstated the items referred to in paragraph 24 herein.  As a result of the material misstatement of these items, the Individual Defendants caused the Company to restate its 2003 net loss of $21 million to a *net loss of $333 million*, and its 2004 net income of $247 million to a *net loss of $44 million*.  Furthermore, Individual Defendants' material misstatements caused the Company to increase its accumulated deficit (as of October 31, 2002) by *$1.7 billion*.  Furthermore, As a result of the material misstatement of these items, the Individual Defendants caused the Company to restate its 1Q05, 2Q05, and 3Q05 aggregate net income by *negative $74 million*.

29.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages, including, but not limited to, costs and expenses incurred in connection with the Company's restatements of historical financial statements.  As disclosed in a Form 8-K filed by the Company with the SEC on March 6, 2008, the Company has incurred *$356 million* in expenses in connection with its restatement to date: *$333 million* related to professional and legal fees associated with audits, preparation of public filing documents, and documentation and assessment of internal control over financial reporting; and *$23 million* related to the refinancing of the Company's public debt due to default under certain loan covenants as a result of the Company's delinquent SEC filings.  Furthermore, Navistar has acknowledged that the Company's restatement of its 2002 – 2005 financial statements is the subject of a formal investigation by SEC, in connection with which the Company has incurred and will continue to incur substantial expenses.

## Disclosure of the Individual Defendants' Wrongdoing

30.    On December 14, 2005, the Company issued a press release in which it announced that it would postpone a scheduled meeting with security analysis and shareholders in order to continue the Company's external audit:

> Navistar International Corporation (NYSE:NAV), the nation's largest combined commercial truck and mid-range diesel engine producer, today postponed a scheduled meeting with security analysts and shareowners because the company's external audit for Fiscal 2005 is still in progress.
>
> "As a company, we have high standards and our audit process is taking longer than expected," said Daniel C. Ustian, Navistar chairman, president and chief executive officer. "We intend for this meeting to take place at the first opportunity when we are able to provide complete Fiscal 2005 results and 2006 guidance."
>
> Financial results for 2005 will be announced upon completion of the company's external audit and a Form 10-K is anticipated to be filed on time in January.

31.    On January 17, 2006, the Company issued a press release in which it announced that it would delay filing its Annual Report on Form 10-K for the fiscal year ended October 31, 2005:

> WARRENVILLE, Ill. - January 17, 2006 - Navistar International Corporation (NYSE: NAV), the nation's largest combined commercial truck and mid-range diesel engine producer, announced today that it will not file its Form 10-K for the fiscal year ended October 31, 2005, by its January 17 filing deadline because it is still in discussions with its outside auditors about a number of open items.
>
> Because there has been no determination when the ongoing discussions with Deloitte and Touche LLP will be concluded, the company said it cannot determine when it will be able to file its Form 10-K. The company and Deloitte are reviewing a number of open items including some complex and technical accounting issues and the company cannot determine the impact the resolution of these issues may have, if any, on the per share earnings guidance issued last September. The company's Form 10-K for

fiscal 2005 will be filed with the Securities and Exchange Commission as soon as practical.

In mid December 2005, a key member of the Deloitte audit team went on an unexpected, extended medical leave. A new audit team from Deloitte is now working to complete the year-end audit for fiscal 2005.

\* \* \*

Since the company's 2005 Form 10-K has been delayed, the company may be delayed in announcing financial results for its first fiscal quarter ending January 31, 2006. The company also stated that it will postpone its annual meeting of shareowners, previously scheduled for February 21, 2006, to a later date to be announced.

The company believes the delay in filing the Form 10-K should not result in any adverse action against the company by its lenders, even though the delay will result in the company being unable to comply promptly with requirements in various debt agreements and financial arrangements for delivery of year-end financial statements.

While the company said it will not issue specific earnings guidance for 2006 at this time, it said that based on the current industry outlook, it expects that earnings per share will be higher than the current average estimate of Wall Street security analysts of $5.34 per share.

\* \* \*

Robert C. Lannert, Navistar vice chairman and chief financial officer, is working closely with Bill Caton, executive vice president of finance, in completing the year-end audit. As previously announced, Caton will succeed Lannert as chief financial officer upon filing of the company's Form 10-K. Lannert has been undergoing cancer treatments in recent months and is making excellent progress in his recovery.

32.     On February 16, 2006, the Company issued a press release in which it announced that the Company's principal accounting officer, defendant Schwetschenau, had been reassigned, purportedly to facilitate the completion of the Company's audit:

On February 16, 2006, Navistar International Corporation (the company), announced that Mark T. Schwetschenau, the company's

13

Controller and principal accounting officer, has been reassigned to another position within the company and no longer serves as the principal accounting officer or as an officer of the company. This action was taken in order to facilitate the completion of the audit of the company's financial statements for the fiscal year ended October 31, 2005. The company previously announced that it would not file its Annual Report on Form 10-K for the fiscal year ended October 31, 2005 by the filing deadline because of an ongoing review of a number of complex and technical accounting issues. Bill Caton, Executive Vice President of Finance, who joined the company last October and has extensive experience in dealing with complex and technical issues, will take the lead in working to complete the review of the accounting issues necessary to finalize the company's fiscal 2005 financial statements. Robert Lannert, the company's Chief Financial Officer, will continue to provide financial leadership to the company during this transition period.

33.    On February 21, 2006, the Company issued a press release in which it announced that the Company's review of its accounting matters may result in changes to its previously issued financial statements, and may require a restatement:

Navistar announced on January 17th that it would not file its Annual Report on Form 10-K for fiscal year ended 2005 by the filing deadline because of an ongoing review of a number of complex and technical accounting items. Navistar continues to work toward a resolution of these items and progress is being made. The company's review of the accounting matters may result in changes to its previously issued financial statements, including the possibility of a restatement. In light of the accounting review, Navistar is not able to give earnings guidance for fiscal year 2005. Among the items being reviewed are whether certain leases should have been capitalized rather than accounted for as operating leases, whether certain affiliates should have been consolidated rather than reported on the equity method, and certain timing adjustments that would shift revenue and expense amounts between reporting periods. Matters identified at this stage are necessarily preliminary and subject to change. To assist in the ongoing efforts to complete the review of the company's financial statements, the company has retained external consultants, including Huron Consulting Group and Skadden, Arps, Slate, Meagher & Flom, LLP.

34.    On April 7, 2006, the Company issued a press release in which it announced that it would restate its financial results for the fiscal years 2002 through 2004 and for the first nine

months of fiscal 2005.  In addition, the Company announced that it had replaced Deloitte &

Touche LLP as its outside independent auditors:

> WARRENVILLE, Ill. -- April 7, 2006 -- Navistar International
> Corporation (NYSE: NAV), the nation's largest combined
> commercial truck and mid-range diesel engine producer,
> announced today that it will restate its financial results for the
> fiscal years 2002 through 2004 and for the first nine months of
> fiscal 2005.
>
> The company also said that the audit committee of its board of
> directors has designated KPMG LLP as the company's new
> independent auditor, subject to KPMG's customary client
> acceptance procedures, to replace Deloitte & Touche LLP, whose
> engagement with the company was terminated by the audit
> committee. KPMG will opine on the 2005 Form 10-K as well as
> the prior years restatements.
>
> The need for the restatements has been identified in the ongoing
> review of accounting matters that have prevented the company
> from filing its fiscal 2005 annual report on Form 10-K and its first
> quarter 2006 quarterly report on Form 10-Q on time. With the
> change of independent auditors the timing of the filing of the 2005
> Form 10-K, including the prior periods on a restated basis, cannot
> be determined at this time.
>
> According to Bill Caton, Navistar's executive vice president,
> finance, to date, the company has identified items requiring
> restatement to include accounting for anticipated external funding
> of product development programs; timing of recognition of
> amounts deemed to be collectible from certain suppliers, including
> rebates and warranty recoveries; accounting for warranty to be
> provided by the company outside of the terms of the contractual
> arrangements; and shifting balances and expense amounts between
> reporting periods at one of the company's foundry operations. The
> company's review process continues and will likely result in the
> identification of additional items requiring correction in the
> restated results.
>
> * * *
>
> The company also announced that James A. Blanda is joining
> Navistar as interim corporate controller, subject to formal board
> approval later this month. Blanda currently is a partner with Tatum
> LLC, an interim executive services and consulting firm. Prior to
> that, Blanda was senior vice president, financial services and chief

financial officer for the Chicago Stock Exchange from 1998 to 2004 and vice president and controller for Sears, Roebuck and Co. from 1992 to 1998.

35.    On September 5, 2006, the Company filed a Form 8-K with the SEC in which it

announced that defendant Lannert would no longer serve as the Company's CFO:

> On August 29, 2006, the Board of Directors of Navistar International Corporation (the "company") promoted William A. Caton to the position of Executive Vice President and Chief Financial Officer of the company, effective as of September 1, 2006, to replace Robert C. Lannert, who will now focus on future strategic initiatives.

36.    On February 13, 2007, the Company announced that its stock would no longer

trade on the New York Stock Exchange.  Instead, as a result of the Company's still-delinquent

SEC filings and ongoing internal audit investigation, the Company's stock would now trade on

the pinks sheets:

> Navistar International Corporation will begin trading tomorrow on the over-the-counter market commonly known as the "pink sheets" under the symbol NAVZ following its suspension from the New York Stock Exchange at the end of trading today. The company's preferred stock will trade under the symbol NAVZP.
>
> Trading on the pink sheets will continue while Navistar pursues the appeal it announced last week of the New York Stock Exchange decision to suspend trading and delist the company because the company's completion of the restatement of its fiscal 2005 financial statements will extend beyond the suspension date.

37.    On October 25, 2007, the Company issued a press release in which it announced

that it would restate its financial results for the fiscal years ended October 31, 2003, 2004, and

2005 by $1.12 billion, and that the Company would record an additional $847 in income tax

adjustments:

> NEW YORK, Oct. 25, 2007 — Navistar International Corp. (Other OTC: NAVZ) today released summary preliminary and unaudited results for fiscal years ended October 31, 2003, 2004 and 2005, marking progress toward becoming a current filer with the

16

Securities and Exchange Commission (SEC). Navistar's senior management also provided the company's third quarter 2007 operating metrics and reaffirmed its commitment to 2009 growth and pro forma segment margin targets.

"We've reached the point in our restatement process where we can review many of our key financial indicators with investors and analysts," said Daniel C. Ustian, Navistar chairman, president and chief executive officer. "This is a significant milestone toward becoming current in our SEC filings and toward the relisting of our stock on a major exchange. We are committed to thorough and accurate financial reporting for our shareholders and investment community and to guide our business decisions."

Ustian emphasized the company's commitment to its 2009 financial targets: $15 billion in revenue and $1.5 billion pro forma segment margins. "Our unwavering focus is on producing great products, improving the competitiveness of our cost structure and generating profitable growth for our shareholders," he said. "Nothing in the restatement effects will hinder us from maintaining that focus and delivering on our targets."

The company's pre-tax restatement adjustments total negative $1.12 billion during the restatement period of 2003 and prior, 2004 and the first three quarters of 2005. In addition, the company recorded $874 million in income tax adjustments, including a full valuation allowance for deferred tax assets. (Condensed unaudited financial information is attached to this news release.)

Included in the $1.12 billion are warranty reserve increases of $321 million, representing the largest change to operational results. During an investor and analyst meeting today, Ustian detailed recent warranty performance improvements and committed to report the company's warranty expense progress on a quarterly basis.

"The fundamentals of our business have grown stronger throughout the restatement process," Ustian said. "We've developed exciting new products with high-quality launches, maintained strong dealer relationships and expanded our reach into non-traditional areas including military and export markets."

**Navistar Strengthens Financial Control Environment**

Management has assessed the effectiveness of Navistar's internal controls over financial reporting and identified a number of material weaknesses. This assessment determined a need to

establish stronger awareness regarding consistent application of highly ethical standards across all areas of the company, the importance of internal controls over financial reporting and strict adherence to generally accepted accounting principles (GAAP). To address these issues, the company has developed a broad and aggressive plan to reinforce within its culture the importance of ethics, integrity and working in a manner consistent with the company's seven core values, including accountability and communication.

"Our leadership team is committed to strengthening our control environment and reemphasizing the importance of operating within our values and guiding behaviors, which are grounded in simply doing the right thing," Ustian said. "We are actively engaged in implementing comprehensive remediation efforts to address these control deficiencies."

"We are continuing to strengthen our company's financial reporting and internal control environment," said Bill Caton, executive vice president and chief financial officer. "Navistar's reputation is one of its greatest assets and is the basis upon which we build the trust of our shareholders, our customers, our business partners and our employees. We have taken significant measures to rebuild an effective internal control environment, and we expect to continue to aggressively invest in this area in the coming years."

Among actions taken to strengthen its financial processes, the company has hired more than 50 additional accounting employees; strengthened its finance and accounting leadership; realigned its finance and accounting reporting structure; and hired a new vice president of internal audit, a new chief accounting officer and a new chief information officer. Additionally, Navistar has enhanced company-wide communication regarding the importance of accurate financial reporting and a robust control environment.

In addition to management's own assessment, a thorough investigation has been conducted by an independent law firm. Initiated by an independent committee of Navistar's board of directors, the investigation echoed the findings of management regarding the internal control environment and determined that most of the errors corrected in the restatement were due to lack of proper accounting knowledge, which resulted in the misapplication of GAAP. The independent investigation also identified instances of intentional misconduct that resulted in some of the company's smaller, but in some cases material, restatement adjustments. Most of the individuals who were involved in instances of misconduct are no longer employed by the company. In other instances, the

independent committee of the board has implemented appropriate remediation plans.

38.     On October 29, 2007, the Company filed a Form 8-K with the SEC in which it announced that it had terminated defendant Lannert effective October 31, 2007:

> Navistar International Corporation's (the company) former Vice Chairman and Chief Financial Officer, Robert C. Lannert's employment with the company has been terminated effective October 31, 2007.

39.     On December 12, 2007, the Company filed with the SEC a Form 10-K for the fiscal year ended October 31, 2005 (the "10-K"). In the 10-K, the Company further discussed the restatement that was previously announced on October 25, 2007, identifying 14 separate areas in which they materially overstated their financial statement from 2002 through 2005, reiterating that:

> On April 6, 2006, the management of NIC, with the concurrence of the audit committee of our Board of Directors, concluded that NIC's previously issued consolidated financial statements for the years ended October 31, 2002 through 2004, and all previously issued quarterly consolidated financial statements for periods after October 31, 2004, should be restated. In addition, in April 2006, the audit committee of our Board of Directors dismissed our independent registered public accounting firm, Deloitte & Touche LLP, and approved the engagement of KPMG LLP as our independent registered public accounting firm.
>
> * * *
>
> Previously reported stockholders' equity as of October 31, 2004 and 2003 have been reduced by $2.4 billion and $2.0 billion, respectively, as a result of the restatement adjustments. We have adjusted our November 1, 2002 accumulated deficit to recognize corrected items that related to prior periods, increasing the deficit by $1.7 billion.
>
> For the year ended October 31, 2004, the effect of the restatement was to reduce previously reported net income of $247 million to a loss of $(44) million. For the year ended October 31, 2003, the previously reported net loss of $(21) million was increased to a net loss of $(333) million.

40.    On January 4, 2008, the Company filed a Form NT 10-K with the SEC in which it announced that it would be unable to file its Form 10-K for the fiscal year ended October 31, 2007:

> Navistar International Corporation ("the company") is unable to timely file its Annual Report on Form 10-K for the fiscal year ended October 31, 2007 ("the Report") because of its ongoing review of a number of complex and technical accounting items relating to its financial statements that are to be filed in its Annual Report on Form 10-K for the fiscal year ended October 31, 2006, which has yet to be filed. As a result of this ongoing review, the company was unable to timely file the Report with the Commission by December 31, 2007, and was unable to file the Report within the fifteen-day extension provided by Rule 12b-25(b). The company expects to file the Report by mid-2008 following the resolution of the foregoing matters and the filing of Form 10-K for the fiscal year ended October 31, 2006.

## INDIVIDUAL DEFENDANTS' STOCK SALES BASED UPON MATERIAL NON-PUBLIC INFORMATION

41.    From December 31, 2002 – the day the FY02 10-K was filed with the SEC – until January 17, 2006 – the day that the Company announced that it would delay the filing of its FY05 10-K – the Company's common stock rose from $24.31 per share to $26.62, an increase of 9.5%. The Company's common stock peaked in 2004 at $52.75 per share on January 22, 2004.

42.    This gain was caused as a direct result of the Individual Defendants' failure to recognize and correct the Company's internal control failures, and the deliberate overstatement of the Company's financial performance in the Company's Form 10-Ks and 10-Qs.

43.    In breach of both their fiduciary duty of good faith and loyalty, the Individual Defendants willfully ignored the obvious and pervasive problems with Navistar's accounting and internal control practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

44.    The material non-public information discussed above was well known among Navistar insiders, including the Individual Defendants, and was discussed formally and informally during Navistar Board and committee meetings, management meetings, and other meetings attended by the Individual Defendants.

45.    In contravention of their fiduciary duties of good faith and loyalty, defendants Griffin, Hammes, Lannert, Morcott, and Ustian, with the knowledge that the Company's financial statements were false and materially misstated, sold more than $8.2 million worth of Company stock in order to line their own pockets.

46.    From December 31, 2002 until January 17, 2006, defendants Griffin, Hammes, Lannert, Morcott, and Ustian, based on their knowledge of material non-public information regarding the Company, sold nearly 190,000 shares of Navistar stock, garnering total proceeds of over $8.2 million, as follows:

| Name | Transaction Date | Shares Sold | Sale Price | Gross Proceeds |
|---|---|---|---|---|
| Griffin, Abbie | 1/7/04 | 6,500 | $49.87 | $324,168.00 |
| Hammes, Michael | 2/22/05 | 10,500 | $38.51 | $404,383.35 |
| Lannert, Robert | 8/26/03 | 35,929 | $42.74 | $1,535,605.46 |
| Lannert, Robert | 12/16/03 | 41,202 | $44.58 | $1,836,579.15 |
| Lannert, Robert | 12/22/03 | 2,094 | $47.75 | $99,978.03 |
| Lannert, Robert | 12/23/03 | 6,889 | $47.72 | $328,743.08 |
| Lannert, Robert | 3/16/04 | 9,058 | $44.54 | $403,443.32 |
| Lannert, Robert | 12/13/04 | 10,905 | $40.41 | $440,671.05 |
| Lannert, Robert | 12/21/04 | 49,995 | $42.68 | $2,133,536.63 |
| Morcott, Southwood | 12/19/03 | 1,500 | $48.08 | $72,120.00 |
| Ustian, Daniel | 9/5/03 | 15,392 | $43.35 | $667,243.20 |
| **Totals** | | **189,964** | | **$8,246,471.27** |

47.    At the time that the stock sales referenced in the above paragraph were made, defendants Griffin, Hammes, Lannert, Morcott, and Ustian each knew that the Company's

financial statements were false and materially overstated, and that the Company's stock price was materially inflated as a result thereof.

48.    The stock sales described in paragraph 46 were not part of any normal or regular pattern or practice of such sales by the Individual Defendants, but rather were unusual in that the Individual Defendants sold large amounts of Navistar stock prior to revealing the truth about the Company's internal control problems and materially overstated financial statements.

49.    Specifically, defendants Griffin, Hammes, Lannert, Morcott and Ustian each sold significant portions of their Navistar holdings between December 31, 2002 and January 17, 2006, as demonstrated by the following table:

| Name | Transaction Date | Shares Sold | Shares Remaining After Sale | Percent of Holdings Sold |
|---|---|---|---|---|
| Griffin, Abbie | 1/7/04 | 6,500 | 880 | 88.08% |
| Hammes, Michael | 2/22/05 | 10,500 | 400 | 96.33% |
| Lannert, Robert | 8/26/03 | 35,929 | 88,886 | 28.79% |
| Lannert, Robert | 12/16/03 | 41,202 | 88,886 | 31.67% |
| Lannert, Robert | 12/22/03 | 2,094 | 98,394 | 2.08% |
| Lannert, Robert | 12/23/03 | 6,889 | 91,505 | 7.00% |
| Lannert, Robert | 3/16/04 | 9,058 | 91,505 | 9.01% |
| Lannert, Robert | 12/13/04 | 10,905 | 91,505 | 10.65% |
| Lannert, Robert | 12/21/04 | 49,995 | 173,073 | 22.41% |
| Morcott, Southwood | 12/19/03 | 1,500 | 3,000 | 33.33% |
| Ustian, Daniel | 9/5/03 | 15,392 | 34,010 | 31.16% |
| **Totals** | | **189,964** | | |

## The Director Defendants' Violation of Delaware Law

50.    Pursuant to Delaware law, Navistar is required to hold an annual meeting of shareholders at least once every 13 months.

51.    Navistar's last annual meeting was held on March 23, 2005, more than 35 months ago.

52.    In violation of Delaware law, the Director Defendants failed to schedule, provide notice of, or hold an annual meeting for 2006 or 2007.

## DERIVATIVE AND DEMAND ALLEGATIONS

53.    Plaintiff brings Counts I, II, and III of this action derivatively in the right and for the benefit of Navistar to redress breaches of fiduciary duties by the Individual Defendants.

54.    Plaintiff will adequately and fairly represent the interests of Navistar and its shareholders in enforcing and prosecuting its rights.

55.    Plaintiff is an owner of Navistar common stock and was an owner of Navistar common stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

56.    At the time Plaintiff commenced this action, the Board consisted of the following eleven (11) individuals: defendants Belton, Clariond, Correnti, Griffin, Hammes, Keyes, Morcott, and Ustian, and non-defendants William Caton, David D. Harrison, and Dennis D. Williams.  As a result of the facts set forth herein, Plaintiff has not made any demand on the Navistar Board to institute this action against the Individual Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

   a.    In light of their knowledge of the Company's ongoing improper accounting and revenue recognition practices, defendants Belton, Clariond, Correnti, Griffin, Hammes, Keyes, Morcott, and Ustian each face a substantial likelihood of being held liable for breaching their fiduciary duties, and therefore are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

   b.    In light of their knowledge of the Company's ongoing improper accounting and revenue recognition practices, defendants Belton, Clariond, Correnti, Griffin, and Keyes, as members of the Audit Committee at relevant times hereto, each face a substantial likelihood of being held liable for breaching their fiduciary duties,

23

and therefore are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

c.    Defendants Griffin, Hammes, Morcott, and Ustian, because all four of them face a substantial likelihood of being held liable for breaching their fiduciary duties of loyalty and good faith for engaging in illegal insider trading of Navistar securities, as alleged herein, and therefore they are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action; and

d.    Defendants Clariond, Correnti, Hammes, Keyes, and Morcott comprise the Compensation Committee.  According to the 10-K, the Compensation Committee has the responsibility to approve and monitor all compensation and benefit programs for our executive officers (designated as Section 16 Officers).    Accordingly, defendants Caton and Ustian are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action against defendants Clariond, Correnti, Hammes, Keyes, and Morcott, who control Caton's and Ustian's compensation as a senior executive officers of the Company.

## CLASS ACTION ALLEGATIONS

57.    Plaintiff brings Count IV of this action on his own behalf and as a class action on behalf of all Class members, as defined herein.

58.    The "Class" consists of all persons who held Navistar common stock on the date of filing of this Complaint.  Excluded from the Class are defendants and their respective families, subsidiaries, affiliates, and successors.

59.    Membership in the Class is so numerous as to make joinder of all Class members impracticable.  There are millions of shares of Navistar common stock outstanding.  The disposition of the Class' claims in a class action will provide substantial benefits to the parties and the Court.

60.    There are numerous and substantial questions of law and fact common to all members of the Class which control this litigation and which predominate over any individual

issues.  The common questions of law and fact include:

      a.      whether the defendants violated Delaware law as alleged herein; and

      b.      whether the relief requested herein on behalf of the Class should be granted.

61.      The claims of Plaintiff are typical of the claims of the Class and Plaintiff has no interest adverse to the interests of the other members of the Class.

62.      A class action is superior to other methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

      a.      the prosecution of separate actions would create a risk of inconsistent or varying adjudications;

      b.      the defendants have acted on grounds generally applicable to the Class;

      c.      because of the complexity of the issues involved in this litigation, the size of the individual Class members' claims, and the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs the defendants committed;

      d.      this action will cause an orderly and expeditious administration of the Class' claims, and will foster economies of time, effort and expenses;

      e.      when the liability of the defendants has been adjudicated, claims of all members of the Class can be determined by the Court; and

      f.      this action presents no difficulty that would impede its management by the Court as a class action and is the best available means by which Plaintiff and other members of the Class can seek redress for the harm caused by the defendants.

## COUNT I

## DERIVATIVELY AGAINST THE INDIVIDUAL DEFENDANTS
## FOR BREACH OF FIDUCIARY DUTY OF GOOD FAITH

63.      Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

64.     Plaintiff brings this Count I derivatively on behalf of the Company against the Individual Defendants.

65.     As alleged in detail herein, each of the Individual Defendants had a duty to, among other things, exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and, when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence.

66.     As alleged in detail herein, the Individual Defendants breached their fiduciary duties by: (i) willfully ignoring the obvious and pervasive problems with Navistar's accounting and financial reporting practices and procedures and internal controls and failing to make a good faith effort to correct the problems or prevent their recurrence; and (ii) knowingly disseminating to Navistar shareholders false financial statements.

67.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages, including, but not limited to, costs and expenses incurred in connection with the Company's restatements of historical financial statements.

## COUNT II

### AGAINST DEFENDANTS GRIFFIN, HAMMES, LANNERT, MORCOTT, AND USTIAN FOR UNJUST ENRICHMENT IN CONNECTION WITH INSIDER STOCK SALES

68.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

69.     Defendants Griffin, Hammes, Lannert, Morcott, and Ustian were unjustly enriched by their receipt of proceeds from their illegal sales of Navistar common stock, as

alleged herein, and it would be unconscionable to allow them to retain the benefits of their illegal conduct.

70.     To remedy defendants Griffin, Hammes, Lannert, Morcott, and Ustian's unjust enrichment, the Court should order them to disgorge to the Company all proceeds derived from their illegal sales of Navistar common stock.

## COUNT III

**AGAINST DEFENDANTS GRIFFIN, HAMMES, LANNERT, MORCOTT, AND USTIAN FOR BREACH OF FIDUCIARY DUTY OF GOOD FAITH AND LOYALTY IN CONNECTION WITH INSIDERS STOCK SALES**

71.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

72.     At the time of each of the stock sales set forth herein, each of defendants Griffin, Hammes, Lannert, Morcott, and Ustian knew, but did not disclose publicly, that the Company's financial results were false and misleading as a result of the Company's failure to comply with applicable accounting and revenue recognition procedures.  Each of defendants Griffin, Hammes, Lannert, Morcott, and Ustian made each of the stock sales described herein on the basis of and because of their knowledge of the material non-public information described herein.

73.     At the time of their stock sales, each of defendants Griffin, Hammes, Lannert, Morcott, and Ustian knew that when it was disclosed that the Company's financial results were false and misleading as a result of the Company's failure to comply with applicable accounting and revenue recognition procedures, the price of the Company's common stock would dramatically decrease.  Defendants Griffin, Hammes, Lannert, Morcott, and Ustian's sales of Navistar common stock based on their knowledge of this material non-public information was a

breach of their fiduciary duties of loyalty and good faith.

74.    Since the use of the Company's proprietary information for their own gain constitutes a breach of defendants Griffin, Hammes, Lannert, Morcott, and Ustian's fiduciary duties, the Company is entitled to the imposition of a constructive trust on any proceeds defendants Griffin, Hammes, Lannert, Morcott, and Ustian obtained thereby.

<u>**COUNT IV**</u>

**INDIVIDUALLY AND AS A CLASS ACTION
AGAINST THE DIRECTOR DEFENDANTS
<u>FOR VIOLATION OF DELAWARE LAW</u>**

75.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

76.    Plaintiff brings this Count IV individually and on behalf of the Class against the Director Defendants.

77.    Pursuant to Delaware law Navistar is required to hold an annual meeting of shareholders at least once every 13 months.

78.    Navistar's last annual meeting was held on March 23, 2005, more than 35 months ago.

79.    In violation of Delaware law, the Director Defendants failed to schedule, provide notice of, or hold an annual meeting for 2006 or 2007.

80.    To remedy the Director Defendants' foregoing violation of Delaware law, the Court should issue an Order requiring the Director Defendants within ten (10) days to: (i) schedule an annual meeting of Navistar's shareholders to be held no later than thirty (30) days from the date of the Order; and (ii) provide to Navistar's shareholders notice of the annual meeting in accordance with Navistar's by-laws.

WHEREFORE, Plaintiff demands judgment with respect to Count I as follows:

A.    Awarding the Company the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

B.    Imposing a constructive trust in favor of the Company for the amount of proceeds defendants Griffin, Hammes, Lannert, Morcott, and Ustian received from their sales of Navistar common stock alleged herein, in addition to all proceeds otherwise derived from their service as directors and/or executives of the Company;

C.    Ordering defendants Griffin, Hammes, Lannert, Morcott, and Ustian to disgorge to the Company all proceeds derived from their sales of Navistar common stock alleged herein, in addition to all proceeds otherwise derived from their service as directors and/or executives of the Company;

D.    Granting appropriate equitable relief to remedy defendants' breaches of fiduciary duties;

E.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.    Granting such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff demands judgment with respect to Count II as follows:

A.    Issuing an Order requiring the Director Defendants within ten (10) days to: (i) schedule an annual meeting of Navistar's shareholders to be held no later than thirty (30) days from the date of the Order; and (ii) provide to Navistar's shareholders notice of the annual meeting in accordance with Navistar's by-laws;

B.    Granting appropriate equitable relief to remedy defendants' breaches of fiduciary duties;

C.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

D.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 7, 2008                    Respectfully submitted,

                                        DAVID B. KAHN & ASSOCIATES, LTD.

                                        /s Debra Miller_____
                                        Mark E. King
                                        Debra Miller
                                        One Northfield Plaza, Suite 100
                                        Northfield, IL 60093
                                        Telephone: (847) 501-5083
                                        Facsimile: (847) 501-5086

                                        SCHIFFRIN BARROWAY TOPAZ &
                                        KESSLER, LLP
                                        Eric L. Zagar
                                        Michael C. Wagner
                                        James H. Miller
                                        280 King of Prussia Road
                                        Radnor, PA 19087
                                        Tel: (610) 667-7706
                                        Fax: (610) 667-7056

                                        *Attorneys for Plaintiff*