# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD GARZA, Derivatively on Behalf of of Nominal Defendant NAVISTAR INTERNATIONAL CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 1387 |
| v. | ) ) | Judge Joan B. Gottschall |
| Y. MARC BELTON, EUGENIO CLARIOND, JOHN D. CORRENTI, ABBIE J. GRIFFIN, MICHAEL N. HAMMES, JAMES H. KEYES, ROBERT C. LANNERT, SOUTHWOOD J. MORCOTT, MARK. T. SCHWETSCHENAU, and DANIEL C. USTIAN, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| NAVISTAR INTERNATIONAL CORPORATION, | ) ) ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Richard Garza brought this four-count putative derivative action on behalf of Navistar International Corporation ("Navistar" or the "Company") against certain members of Navistar's board of directors (the "Board") and certain Navistar officers (collectively, the "Individual Defendants"). In his First Amended Complaint (the "Amended Complaint"), Garza seeks to hold the Individual Defendants liable for their alleged breaches of fiduciary duties and other violations of law related to Navistar's accounting practices that allegedly resulted in Navistar's multiple financial restatements and substantial resulting costs and expenses.

1

Defendants move to dismiss the Amended Complaint, arguing that it fails to satisfy federal pleading standards and Delaware standing requirements by inadequately alleging (A) that Garza made a demand that Navistar's Board take action and was wrongfully refused, or that a demand would have been futile, and (B) that Garza was and is a stockholder with an interest in the action.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 23.1 contains specific pleading requirements for shareholder derivative actions, which provide, in relevant part:

> (b) Pleading Requirements. The complaint must be verified and must:
> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
> (3) state with particularity:
> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
> (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b). As explained in greater detail within, while the requirement that Garza make demand on the Navistar Board and the circumstances in which such demand is excused are questions of Delaware law, the adequacy of his allegations are matters of federal law.

## II. ALLEGATIONS OF AMENDED COMPLAINT

Garza names ten Individual Defendants. They are Belton (Board member from 1999 to August 2009; member of the Audit Committee from 2002 until 2005); Clariond (member of the Board since 2002; member of the Audit Committee since 2005)[1]; Correnti (member of the Board

---

[1] Defendants contend that Clariond was not a member of the Audit Committee at relevant times and that Garza's claims therefore fail because a majority of the Board is disinterested and independent so that demand is not excused. The basis of defendants' assertion regarding Clariond is a 10-K filed by Navistar. (*See* Doc. 40 Ex. A.)

since 1994; member of the Audit Committee from 2002 until 2005); Griffin (member of the Board from 1998 to February 2009; member of the Audit Committee from 2002 until 2009); Hammes (member of the Board since 1996; lead director of the Board since February 2008); Keyes (member of the Board since 2002; member of the Audit Committee since 2002); Lannert (formerly Vice Chairman and Chief Financial Officer of Navistar and a member of the Board); Morcott (member of the Board from 2000 to April 2008); Schwetschenau (Senior Vice President and Controller); and Ustian (Chairman of the Board, President and Chief Executive Officer).[2]

Garza alleges that "[s]ince 2002, the Company, with the knowledge, approval, and/or acquiescence of the Individual Defendants, regularly and systematically violated GAAP by improperly accounting for and materially misstating or overstating, among other things, the following: (a) Employee benefit arrangements; (b) Product warranties; (c) Leases; (d) Securitization of financial instruments; (e) Consolidation accounting; (f) Vendor rebates and tooling costs; (g) Liabilities related to contingencies; (h) Revenue recognition; (I) Derivative instruments; (j) Functional currency designation; (k) Property and equipment; (l) Inventories; (m) Unreconciled accounts and timing of income/expense recognition and (n) Income tax." (Doc. 32 ("Am. Compl.") ¶ 24.) He further alleges that since 2002,"[t]hrough their receipt of weekly, monthly and quarterly reports; attendance at Board and Audit Committee meetings;

---

Defendants assert that this form is the basis for much of Garza's Amended Complaint, and that the form itself shows that Clariond was not an Audit Committee member. (*Id.* at 186.) Defendants' contention is flawed. The Form 10-K describes, in relevant part, "selected information for each of our current directors . . . as of November 30, 2007." (*Id.* at 185.) The form does not resolve definitively the question of Clariond's membership on the Audit Committee in 2002 through 2005, when Garza alleges that the Board breached its fiduciary duties, or in 2008, when Garza contends that his demand was excused. The court will not consider defendants' submissions of additional securities filings submitted for the first time in reply (regarding, in part, Clariond's committee membership from the years 2002 through 2004). (*See* Doc. 43 Exs. A-C.)

[2]   The Audit Committee Defendants are Belton, Clariond, Correnti, Griffin, and Keyes. The Director Defendants are Belton, Clariond, Correnti, Griffin, Hammes, Keyes, Lannert, Morcott, and Ustian.

review of the Company's financial statements; and conversations with the Company's management, internal auditors, and external auditors, the Individual Defendants knew that Navistar's accounting and financial reporting practices were improper and its internal controls were materially deficient." (*Id.* ¶ 25.) It is also alleged that "[i]n breach of both their fiduciary duty of good faith and, with respect to the Audit Committee Defendants, their responsibilities pursuant to the Audit Committee Charter, the Individual Defendants willfully ignored the obvious and pervasive problems with Navistar's accounting and financial reporting practices and procedures, and internal controls, and failed to make a good faith effort to correct the problems or prevent their recurrence." (*Id.*)

Navistar allegedly disseminated false Form 10-K filings "with the knowledge, approval, and participation of each of the Individual Defendants . . ." (*Id.* ¶ 26.) False 10-Q filings also were allegedly disseminated by Navistar in the first nine months of 2005, "with the knowledge, approval, and participation of defendants Lannert, Schwetschenau, and Ustian . . . ." (*Id.* ¶ 27.) While the falsity of these statements is not controversial, given the fact that all or most were eventually restated, the Individual Defendants' awareness of the falsity of these statements and the impropriety of the accounting practices on which the statements are based, essential to Garza's theory of liability, is alleged in the following manner.

"According to Navistar's proxy statements, the full Board met six times during each of the fiscal years 2003, 2004 and 2005. In addition to these six meetings, in each of these three fiscal years, the Board's outside (non-management) directors met three times in regularly scheduled executive sessions to evaluate the performance of the Board and the performance of the Chief Executive Officer, and to discuss the Company's corporate strategies. Furthermore,

4

during each of these fiscal years, all of the directors attended at least 75% of all the meetings of the Board and the committees on which each serves. In particular, the Audit Committee held: eight meetings during fiscal year 2003, twelve meetings during fiscal year 2004 and an undisclosed number of meetings during fiscal year 2005. Given that there were eighteen Board meetings from 2003 through 2005, and at least twenty meetings held by the Audit Committee alone during the same period, it is clear that the Individual Defendants were aware of the Company's multitude of improper accounting and financial reporting practices. The Individual Defendants not only failed to take actions to address these pervasive problems, but they knowingly concealed these issues from Navistar's shareholders, and by doing so each breached their fiduciary duties to the Company and its shareholders." (*Id.* ¶ 28.)

The Amended Complaint continues largely in this vein. While individual statements made at or about this time by Ustian, Lannert and on behalf of the Company are repeated in many cases verbatim, each statement is followed by allegations like the following: "The directors who were on the Board knew these statements were false and misleading and knowingly failed to correct them." (Am. Compl. ¶ 35.) Or, " . . .the directors who were then on the Board knew these statements were false and misleading, as was clarified in the 2005 10-K, but they took no action to correct the false and misleading statements." (*Id.* ¶ 36; *see generally id.* ¶¶ 37-46.)

The Amended Complaint further alleges that five defendants, Griffin, Hammes, Lannert, Morcott, and Ustian, sold 190,000 shares of Navistar stock between December 31, 2002 and January 17, 2006. After a particularized description of when these defendants sold stock during the 2002-2006 period and the amount obtained from the alleged sales, the Amended Complaint

5

contains the following allegations of these defendants' scienter:

- "This gain [made by these defendants in selling their stock] was a direct result of the Individual Defendants' failure to recognize and correct the Company's internal control failures, and the deliberate overstatement of the Company's financial performance in the Company's Forms 10-K and 10-Q." (Am. Compl. ¶ 65.)

- "In breach of their fiduciary duty of good faith and loyalty, the Individual Defendants willfully ignored the obvious and pervasive problems with Navistar's accounting and internal control practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence." (*Id.* ¶ 66.)

- "The material non-public information discussed above was well known among Navistar insiders, including the Individual Defendants, and was discussed formally and informally during Navistar Board and committee meetings, management meetings, and other meetings attended by the Individual Defendants." (*Id.* ¶ 67.)

- "In contravention of their fiduciary duties of good faith and loyalty, defendants Griffin, Hammes, Lannert, Morcott, and Ustian, with the knowledge that the Company's financial statements were false and materially misstated, sold more than $8.2 million worth of Company stock in order to line their own pockets." (*Id.* ¶ 68.)

- "At the time that the stock sales referenced in the above paragraph were made, defendants Griffin, Hammes, Lannert, Morcott, and Ustian each knew that the Company's financial statements were false and materially overstated, and that the Company's stock price was materially inflated as a result thereof." (*Id.* ¶ 70.)

- "The stock sales described in paragraph 69 were not part of any normal or regular pattern or practice of such sales by the Individual Defendants, but rather were unusual in that the Individual Defendants sold large amounts of Navistar stock prior to revealing the truth about the Company's internal control problems and materially overstated financial statements." (*Id.* ¶ 71.)

The Amended Complaint contains four paragraphs titled "Derivative and Demand Excused Allegations." They are entirely boilerplate and conclusory, except for a quote from Judge Gettleman explaining his decision in a different case not to dismiss securities fraud allegations against Navistar, Ustian, Lannert and Schwetschenau in what he described as a "three count, 200-page, 542 paragraph, putative consolidated class action complaint." *See Norfolk County Retirement System v. Ustian*, No. 07 C 7014, Doc. 92 at 18 (July 28, 2009) ("Essentially the [accounting] errors were too basic, there were too many of them, and the bottom line discrepancies were too big (and the inconsistencies in the errors too small) to raise a compelling alternative inference that the errors were the result of mere incompetence."); Am. Compl. ¶78(a).

While the factual allegations concerning demand futility are conclusory, Garza does assert a theory of why demand would be futile. He alleges that the Director Defendants "each face a substantial likelihood of being held liable for breaching their fiduciary duties, and therefore are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;" that the Audit Committee Defendants "each face a substantial likelihood of being held liable for breaching their fiduciary duties, and therefore are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;" and Griffin, Hammes, Morcott, and Ustian "face a substantial likelihood of being held liable for breaching their fiduciary duties of loyalty and good faith for engaging in illegal insider trading of Navistar securities . . . and therefore they are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action." (Am. Compl. ¶ 78.)

7

# III. ANALYSIS

## A. Demand Futility

Defendants first argue that Garza has not alleged sufficient facts excusing his failure to make demand on Navistar's Board prior to bringing suit. The Seventh Circuit has explained that pleading failure to make demand pursuant to Rule 23.1(b)(3)(B) "is governed by both federal procedural requirements and state substantive law." *See Boland v. Engle*, 113 F.3d 706, 710 (7th Cir. 1997). Federal law requires that Garza plead his failure to make demand with particularity. *Id.* When pleading with particularity is required, "it is not sufficient for the shareholder to simply state 'in conclusory terms that he made no demand because it would have been futile.'" *In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 804 (7th Cir. 2003) (quoting *Starrels v. First Nat'l Bank of Chi.*, 870 F.2d 1168, 1170 (7th Cir. 1989)).

In the part of his Amended Complaint specifically devoted to explaining his failure to make demand, Garza alleges that demand would have been futile because the specified Individual Defendants (totaling a majority of Board members) "face a substantial likelihood of being held liable for breaching their fiduciary duties," and in the case of four directors, for engaging in insider trading. Garza provides no factual detail, however, suggesting why these Individual Defendants face such a likelihood of liability. (Am. Compl. ¶ 78.) Rather, these allegations are stated entirely in conclusion, and are insufficient to satisfy Rule 23.1. *See Kamen v. Kemper Fin. Servs., Inc.*, 939 F.2d 458, 460-61 (7th Cir. 1991) (holding that allegations that directors were "under the control" of the corporation "allege[] no facts pertinent to control" and thus "flunk[] the 'particularity' requirement of Rule 23.1"), *on remand from* 500 U.S. 90 (1991).

In response to defendant's motion, Garza points to allegations elsewhere in the Amended Complaint that, he maintains, demonstrate why demand was excused. While the Seventh Circuit has criticized the practice of buttressing conclusory allegations regarding demand futility by reference to the entirety of the complaint, *Boland,* 113 F.3d at 710 ("The better practice surely would have been to develop the reasons themselves with more particularity"), the court examines the allegations throughout Garza's Amended Complaint to determine whether his allegations suffice to plead demand futility with particularity.

      1.     <u>*Aronson*</u>

The law of Delaware, the state in which Navistar is incorporated (Am. Compl. ¶ 5), "governs what excuses are acceptable for failing to make demand." *Boland* 113 F.3d at 710; *Kamen*, 500 U.S. at 108-09. Delaware demand law is based on "the fundamental precept that directors manage the business and affairs of corporations." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000). Thus, Delaware law generally requires that a corporation's shareholder who seeks to bring suit on its behalf first demand that the board of directors bring suit. *Id.* at 812. A shareholder who does not make demand nevertheless may bring suit if he can properly allege that demand would have been futile. *Id.* at 812, 814.

To determine whether demand is excused as futile, a court must ask whether "a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814, *see also Brehm*, 746 A.2d at 256 (noting that "if either [*Aronson*] prong is satisfied, demand is excused"). In his memorandum in opposition to defendant's motion to dismiss, Garza

9

asserts that his allegations should be analyzed under the *Aronson* test, and not under the test of *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), applicable when the plaintiff has alleged unconsidered inaction or a failure of oversight, not, as Garza asserts he alleges here, a deliberate and considered decision not to correct false statements. As Garza argues, "Plaintiff's claims do not challenge the Board's failure to oversee the Company but rather the Board's deliberate and considered decision not to correct the numerous, pervasive improper accounting practices that harmed the Company for years." (Doc. 42 at 9.)

The court has reviewed the entire Amended Complaint (and quoted extensive sections of it above) and finds no respect in which either *Aronson* inquiry is supported by particularized allegations.

Garza first attempts to allege that Navistar's improper accounting practices resulted from a failure of the Board's business judgment. *Aronson*, 473 A.2d at 814. He alleges that "the Company, with the knowledge, approval, and/or acquiescence of the Individual Defendants, regularly and systematically violated GAAP by improperly accounting for and materially misstating or overstating" various things (Am. Compl. ¶ 24), that defendants "willfully ignored . . . obvious and pervasive problems" (*id.* ¶ 25), and that the Company, "with the knowledge, approval, and participation of each of the Individual Defendants," disseminated false financial statements and SEC filings (*id.* ¶ 26). Garza alleges that numerous Board and Audit Committee meetings were held and, after specifying the many meetings that occurred, concludes that "[g]iven that there were eighteen Board meetings from 2003 through 2005, and at least twenty meetings held by the Audit Committee alone during the same period, it is clear that the Individual Defendants were aware [of] the Company's multitude of improper accounting and

financial reporting practices." These were "knowingly concealed" from Navistar's shareholders. (*Id.* ¶ 28.)

Such conclusory allegations are repeated again and again throughout the Amended Complaint, as if repeating them would somehow make them more persuasive. While Garza alleges various Individual Defendants' misstatements with particularity, he alleges their awareness of the improper accounting and reporting practices–the basis of his theory of liability–only in the most conclusory of terms. *See In re Xcel Energy, Inc.*, 222 F.R.D. 603, 607 (D. Minn. 2004) (finding that allegations that defendants "knew or should have known," "knew or acquiesced in," "authorized, acquiesced and/or failed to," and had "actual knowledge of or consciously disregarded" "do not constitute facts pleaded with particularity"). Focusing on the relevant pre-restatement period, he refers to no date on which any Board member was notified of improper accounting practices, nor the manner by which any such notification was provided, nor the substance of any such notification.

Garza also has failed to plead any particularized facts suggesting that a majority of the members of the Board at the time he filed his complaint lacked disinterest or independence. Rather, he repeatedly alleges in an entirely conclusory fashion that various Individual Defendants were incapable of "disinterestedly and independently considering a demand" because they faced a "substantial likelihood of being held liable for breaching their fiduciary duties . . . ." (Am. Compl. ¶ 78.)[3]

---

[3] Although Garza alleges a lack of disinterestedness and independence, none of his allegations address the Director Defendants' lack of independence. Director independence generally concerns whether a board member was "dominate[d] or control[led]" by majority ownership or another director, or is otherwise subject to improper influence, *Aronson*, 473 A.2d at 815, a circumstance not suggested by Garza's allegations or briefing. To the contrary, several of Garza's allegations suggest that the Director Defendants, at least by the time demand should

11

Interest, which is often established when directors self-deal or make decisions from which they stand to benefit, *Aronson*, 473 A.2d at 815, also can be established "in rare cases" in which directors would be defendants in the suit to be demanded and, in such a suit, would face "a substantial likelihood" of liability. *Id.*; *Rales*, 634 A.2d at 936. "However, the *mere threat* of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors, although in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment . . . ." *Aronson*, 473 A.2d at 815 (emphasis added). Nor is the prospect of directors suing themselves, which would place "the conduct of the litigation in hostile hands and prevent[] its effective prosecution," *id.* at 818, sufficient.

In briefing, Garza asserts that the Audit Committee Defendants plus Ustian, who constitute six of the eleven members of the Board, faced such a prospect of liability "[d]ue to their participation in and knowledge of the improper accounting practices at Navistar . . . ." (Doc. 42 at 18.) Garza cites no part of his Amended Complaint to support his argument, and, as discussed above, a review of Garza's Amended Complaint reveals no particularized factual allegations suggesting that any defendant "participat[ed] in [or had] knowledge of the improper accounting practices at Navistar." (*Id.*) Garza's Amended Complaint also alleges that each of the Individual Defendants, except for defendants Lannert and Schwetschenau, faced a

---

have been made, had some capacity to function independently. In April 2006, the Company announced that its Board had replaced its external auditors, Deloitte & Touche LLP with KPMG LLP. (Am. Compl. ¶ 54.) Also in April 2006, the Board reassigned the Company's former Controller, defendant Schwetschenau (sometimes alleged as Schetschenau), assertedly based on information from Deloitte "that Defendant Schetschenau's [*sic*] representations were no longer reliable." (*Id.* ¶ 55.) On August 29, 2006, the Board promoted William A. Caton to replace defendant Lannert as Executive Vice President and Chief Financial Officer. (*Id.* ¶ 58.) In October 2007, the Company terminated Lannert. (*Id.* ¶ 61.)

12

"substantial likelihood of being held liable for breaching their fiduciary duties" by virtue of "their knowledge of the Company's ongoing improper accounting and revenue recognition practices . . . ." (Am. Compl. ¶ 78(a).) Garza chooses not to defend or even refer to this allegation is briefing, which fails in any case because it similarly lacks particularity regarding the Individual Defendants' knowledge.

Finally, Garza alleges in his Amended Complaint that four Individual Defendants "face[d] a substantial likelihood of being held liable for breaching their fiduciary duties," and are therefore interested, by virtue of their insider trading. (*Id.* ¶ 78(c).) As should be clear from the description of these allegations set out above, Garza's allegations of insider trading are as conclusory as his other demand futility allegations, and fail for the same reason: there are no particularized facts from which these defendants' knowledge of Navistar's improper accounting practices can be inferred. Indeed, so superficial are the allegations that Garza fails even to allege that the stock sales enumerated in the Amended Complaint were suspicious in terms of their timing or amount. Nothing provides any indication that, by selling the stock alleged, the individual involved acted atypically. Nor is there any indication of what stock, if any, each selling defendant possessed after the complained-about sale. And, Garza alleges that only four of the eleven Board members at the time he sued–less than a majority–engaged in insider trading and thus were incapable of disinterestedly considering a demand for this reason. Even if these allegations were sufficiently factually detailed, *but see In re Extreme Networks, Inc. Shareholder Derivative Litig.*, 573 F. Supp. 2d 1228, 1242 (N.D. Cal. 2008) (finding that an allegation of insider trading that "does not detail percentage of the holdings sold by [defendants] . . . [,] their

past trading history, the timing of the sales or whether the pattern of trading is suspicious" was "a mere cursory allegation"), they would fail arithmetically.

2. *Norfolk County*

Garza relies heavily on Judge Gettleman's decision in *Norfolk County Retirement System v. Ustian*, No. 07 C 7014, Doc. 92 (July 28, 2009). In that case, a securities fraud action, Judge Gettleman denied a motion to dismiss brought by Navistar, Ustian, Lannert and Schwetschenau, concluding that "[a]lthough it is possible that the individual defendants knew nothing about the content of their representations, this is far from a reasonable inference, let alone a cogent one given the extent of the Individual Defendants' alleged departures from the truth." *Id.* at 17. Garza cites this case in his Amended Complaint (Am. Compl. ¶¶ 72, 73) and relies on it extensively in his opposition to defendants' motion to dismiss (Doc. 42 at 1-2, 14-15).

In *Norfolk County*, Judge Gettleman dealt with a complaint alleging different legal theories and with different governing standards. He also addressed allegations contained in a 200-page, 542-paragraph pleading. This court knows of no authority which would allow it to search for particularized allegations sufficient to support *this* Amended Complaint in another action, and Garza has provided none. This court has not searched the *Norfolk County* complaint, looking for allegations that might lead it to sustain the Amended Complaint before it, because to do so would be inconsistent with Garza's obligation to plead an actionable complaint in this case. Garza is not bound by Rule 11 for the allegations made in the *Norfolk County* action and has chosen not to assert those allegations as part of his Amended Complaint here. And, critically, the opinion of Judge Gettleman is not a finding that anything alleged in the *Norfolk County* complaint is true. It is simply a finding that a complaint completely different from the

14

one before this court, asserting different legal theories and many different facts, alleges enough to give rise to a strong enough inference of scienter. Despite his heavy reliance on the *Norfolk County* opinion, Garza has not endeavored to explain how anything in that opinion satisfies his obligation to plead demand futility adequately here.

       3.     *Abbott*

Garza also argues that the Seventh Circuit's opinion in *In re Abbott Laboratories Derivative Shareholders Litigation* (*Abbott*), 325 F.3d 795 (7th Cir. 2003), requires the denial of the motion to dismiss because the defendants' actions alleged here "are substantially similar to those the court found to be the basis of demand futility in *Abbott Labs*." (Doc. 42 at 13.)

In *Abbott*, the Seventh Circuit considered whether allegations of demand futility were adequate given the board's alleged "conscious inaction" in the face of a six-year investigation by the Food and Drug Administration and the company's continued noncompliance with FDA regulations. 325 F.3d at 809. During the relevant six-year period, the FDA conducted thirteen inspections of Abbott facilities; at the end of each inspection, Abbott was advised of deviations from CGMP (current good manufacturing practices). *Id.* at 799. Four warning letters were also sent to Abbott, noting that inspections had revealed adulterated products. *Id.* Each warning letter told Abbott that if these deviations were not corrected, regulatory action would result. *Id.* The *Wall Street Journal* published an article, in the same time frame, discussing the flaws found by the FDA in Abbott's quality assurance procedures. *Id.* at 800. Also, the FDA and Abbott entered into a Voluntary Compliance Plan to try to achieve compliance in problem areas. *Id.* Eventually, the FDA sent a Warning Letter to Abbott closing out the Compliance Plan after finding continued deviations from the regulations. *Id.*

15

In *Abbott,* the plaintiff alleged facts setting forth not only years of regulatory violations, but also repeated notices to the Abbott board from the FDA that these violations existed and that Abbott was not in compliance with the governing regulations. The Seventh Circuit observed that, according to the *Abbott* plaintiffs' allegations, several of the warning letters were sent to the chairman of the board and were comprised of information which the chairman was obligated to bring to the attention of other board members. 325 F.3d at 802. It also noted that the final FDA letter was sent to another member of the board. *Id.* at 806. And, as early as 1995, the FDA's problems with Abbott were public knowledge. *Id.* The *Abbott* plaintiffs' complaint connected board meetings to Abbott meetings with the FDA and *Wall Street Journal* articles, providing a firm basis for believing that the board knew about the regulatory problems. *Id.* at 808. According to the Seventh Circuit, these particularized allegations were adequate to show that members of the Abbott board were aware of the problems.

Subsequent decisions have declined to find *Abbott* applicable to complaints that fail to set forth similarly detailed allegations. For example, another court in this district dismissed a complaint, stating, "In the present action a complaint mirroring the allegations in *Abbott* would specifically allege repeated notices from the Department of Education identifying serious infractions at [the company's] schools and threatening to shut them down if action is not taken. However, the plaintiffs do not make such allegations." *See McSparran v. Larson*, Nos. 04 C 0041, 04 C 4778, 2006 WL 2052057, at *5 (N.D. Ill. May 3, 2006). Other courts likewise have distinguished *Abbott* where allegations fail to specify notice to director defendants. *In re ITT Corp. Derivative Litig.*, 653 F. Supp. 2d 453, 464 n.6 (S.D.N.Y. 2009) (distinguishing *Abbott*, in which "numerous specific factual allegations showed that the directors were aware of illegal

16

conduct"); *Kenney v. Koenig*, 426 F. Supp. 2d 1175, 1184 (D. Colo. 2006) (distinguishing *Abbott* because the case before it lacked "specific warnings the directors received and ignored"); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 880 (D. Md. 2005) (noting the absence of the "red flags" that had been alleged in *Abbott*).

Garza cites nothing that shows that the accounting failures he alleges were brought to the attention of the Board. Garza alleges no regulatory agency warning letters, no audit information, no shutdowns and no newspaper articles. He cites no federal investigation or lawsuits. Instead, citing *Abbott*, 325 F.3d at 806, Garza contends that the Audit Committee's charter, which required that the committee, *inter alia*, review auditing services, discuss any audit problems or difficulties, and review financial statements (Am. Compl. ¶ 23), means that the Audit Committee Defendants and the other Individual Defendants knew of the accounting improprieties. But the *Abbott* court never held that allegations of a corporate governance procedure, without specific allegations of notice like those present in *Abbott*, would suffice to plead "conscious inaction." And even if such an allegation were sufficient, Garza has failed to make such allegations here with the requisite particularity. The allegation that the Audit Committee's charter necessarily resulted in the Audit Committee Defendants' and other Individual Defendants' knowledge of the improper accounting procedures lacks any factual supporting detail, such as when and how defendants learned of the improper accounting procedures.

Garza has failed to allege demand futility with particularity. His Amended Complaint is dismissed.

**B.     Stock Ownership**

Defendants argue that the Amended Complaint alternatively must be dismissed because Garza insufficiently alleges his ownership of Navistar stock. Rule 23.1(b)(1) requires such pleading and specifically states that the complaint must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of . . . ." Fed. R. Civ. P. 23.1(b)(1). Garza alleges that he "is a shareholder of nominal defendant Navistar, was a shareholder of Navistar at the time of the wrongdoing alleged herein, and has been a shareholder of Navistar continuously since that time." (Am. Compl. ¶ 4.) According to Garza, this allegation is sufficient. *See Plymouth County Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360, 374 (E.D.N.Y. 2008).

Nevertheless, as defendants indicate, numerous decisions hold that general allegations that a plaintiff "is, and was during relevant period," or "is and was at all times relevant" a shareholder are insufficient to satisfy the contemporaneous ownership pleading standard. *In re Affymetrix Derivative Litig.*, No. C 06-05353, 2008 WL 5050147, at *8 (N.D. Cal. Mar. 31, 2008) (granting leave to amend where plaintiffs' allegations were "insufficient to plead continuous ownership because Plaintiffs have not alleged when they purchased the shares and whether they continue to hold them"); *In re Computer Scis. Corp. Derivative Litig.*, No. CV 06-05288, 2007 WL 1321715, at *15 (C.D. Cal. Mar. 26, 2007) (holding that plaintiffs lacked standing for failing to plead stock ownership with sufficient particularity under Rule 23.1); *Haw. Laborers Pension Fund v. Farrell*, No. CV 06-06935, 2007 WL 5255035, at *9 (C.D. Cal. Aug. 23, 2007) (advising the plaintiff to "plead with particularity when it first purchased stock"); *In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007) ("[P]laintiffs must unambiguously indicate in any amended complaint the dates they purchased VeriSign stock, and

18

whether they have continuously owned VeriSign stock from the time of purchase up to the present."); *see also Travis v. Mittelstaedt*, No. CV 06-2341, 2008 WL 755842, at *1-*2 (E.D. Cal. Mar. 19, 2008) ("[A] shareholder derivative complaint must indicate when plaintiffs bought stock in the company, and must state that they have owned stock continuously since the date of the filing of the lawsuit."). Neither party cites authority from this circuit, and the court's research reveals none.

Specific allegations regarding dates of purchase and ownership may be the "best practice," Charles Alan Wright et al., 7C Federal Practice and Procedure § 1828 (3d ed. 1998), but the court cannot agree that Rule 23.1(b)(1) requires pleading with particularity (or, alternatively, that Rule 23.1(b)(1)'s notice pleading requirement requires pleading specific dates of stock ownership). The rule's drafters knew how to require that elements of a derivative action be pleaded with particularity and chose not to require that the contemporaneous stock ownership requirement be so pleaded. While Rule 23.1(b)(3) mandates that the plaintiff "state with particularity" his reasons excusing demand on the corporation, Rule 23.1(b)(1) requires only that the plaintiff "allege" contemporaneous stock ownership. *See* Fed. R. Civ. P. 23.1(b); *accord* Wright, 7C Federal Practice and Procedure § 1828. Therefore, the court agrees with the authority from the Second Circuit enforcing general notice pleading standards with respect to allegations of contemporaneous stock ownership. *Galdi v. Jones*, 141 F.2d 984, 992 (2d Cir. 1944). Garza's allegations of contemporaneous stock ownership suffice, and defendants' motion is denied in that respect.

## IV. CONCLUSION

Defendants argue that if Garza's Amended Complaint is dismissed, he should be denied leave to re-plead. Garza, of course, requests that if the motion to dismiss is granted, he should be allowed to re-plead. In making this request, however, he does not hint at anything he intends to add to his allegations to satisfy the particularity standard.

Without seeing a proposed amendment, the court is not in a position to decide whether or not it will allow Garza to re-plead. Should he seek leave to do so, the court will review the proposed amendment before requiring the defendants to answer or otherwise plead.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 13, 2010